IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| VIVIAN TAYLOR, | Civil No. 04-01118-AA |
| | OPINION AND ORDER |
| Plaintiff, | |
| vs. | |
| SILTRONIC CORPORATION,<br>a Delaware corporation, | |
| Defendant. | |

Richard C. Busse
Matthew B. Duckworth
Busse & Hunt
521 American Bank Building
621 Morrison Street
Portland, Oregon 97205
    Attorneys for plaintiff

John Neupert
Tamera Russell
Miller Nash
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204-3699
    Attorneys for defendant

AIKEN, Judge:

Page 1 - OPINION AND ORDER

Defendant filed a motion for summary judgment against plaintiff's claims for relief. The court held oral argument on September 12, 2005. Defendant's motion is denied.

BACKGROUND

Plaintiff, an African American woman, was first hired by defendant on May 5, 1980. Defendant is a manufacturer of silicon wafers for the computer industry. In 2001, plaintiff brought a civil rights complaint against defendant. In May 2003, plaintiff's complaint was dismissed on summary judgment. On November 18, 2000, plaintiff was moved from the department supervised by Sean Michael (the focus of her 2001 civil rights complaint), to a new department, called Epitaxy, under a new department leader, Nagalingam Lingeswaran ("Mr. Ling").

Mr. Ling knew Mr. Michael as they worked together as two of only four shift leaders who worked on the same shift in different departments. By 2003, Mr. Ling and Mr. Michael had become walking partners and walked together for one year. Mr. Ling knew of plaintiff's problems with Mr. Michael at the time of plaintiff's transfer both because plaintiff had spoken to Mr. Ling about the problems and because Mr. Ling had seen information in plaintiff's employee file concerning these issues. In plaintiff's first civil rights case, plaintiff named Mr. Ling as a potential witness. In 2003, Mr. Ling was aware that plaintiff had made a complaint about him. After her transfer plaintiff

complained that Mr. Ling would stand and stare at her.  Plaintiff also complained that Mr. Ling treated her differently with regard to training.  Specifically, plaintiff alleges that employees who came to the department after her were receiving training on the three different reacters (in ascending difficulty, first the AMT, then the ASM, and finally the G3 reactor) before plaintiff.  Two of those three employees were white and one was Asian.  When plaintiff complained to Mr. Ling that one of the white employees was trained ahead of her, Mr. Ling responded that he "forgot" that person came in after her.

Plaintiff required additional one-on-one training on the reactors once she began the training, however, Mr. Ling did not provide the additional training for plaintiff.  Without certification, an operator is not supposed to be left alone to operate a reactor, however, plaintiff was sometimes assigned to work the AMT's alone.  When plaintiff was criticized by Mr. Ling for an error, plaintiff responded that she needed additional training, however, no additional training was forthcoming.  Plaintiff was then pulled off the G3 reactor and "sent back" to the AMTs and ASMs.  Plaintiff feared that if a lay-off occurred the company would opt to retain employees with a higher level of training, so plaintiff complained to Ruth Underwood in Human Resources.  Plaintiff also told Underwood that Ling would stand at the top of her work area and stare at her.

Underwood called a meeting between David Barbieri, Ling's supervisor, plaintiff and herself. Barbieri appeared to be upset that he was called to a meeting to talk about Ling; he told plaintiff that they were not going to jump just because she said something; he affected an attitude toward plaintiff; he told plaintiff that Ling's staring was "no big deal;" and as far as plaintiff's training he told her that their training quotas were met. Yet when plaintiff was taken off the G3, defendant trained someone else who continued to operate the reactor.

Subsequently, plaintiff was put back on the G3, but on the second day of training, Ling criticized plaintiff for someone else's mistake concerning an incorrect machine setting. Ling also "wrote up" plaintiff for an error she alleges she did not do and prior to conducting an investigation. Plaintiff also complained about receiving an undeserved write up for her conduct for cursing at a man who had physically attacked her and was choking her. After the choking incident, Ling told plaintiff not to make a big deal out of it. Finally, Ling prompted a nurse to report an absence by plaintiff that in the normal course would have soon dropped off her chargeable absenteeism.

In early May 2004, plaintiff went to Ling's office to request vacation time. She asked Ling for dates in mid-May, however, Ling responded that another employee was already scheduled to be gone during that time. Plaintiff then asked Ling

what dates were available. Ling pulled up the calendar, and plaintiff requested vacation time on June 2,3, 7 an 8th. Ling did not respond to plaintiff as they were interrupted by another employee coming to Ling's office with an emergency. Plaintiff assumed she had permission to take those days off.

During the relevant time period, Ling did not require that vacation requests be presented in writing. Specifically, Ling did not require a written request when he was in his office at his computer terminal and able to provide the employee with an immediate response. Even if an employee had no vacation accrued, employees were permitted to "borrow" up to 40 hours of vacation time. Ling knew that plaintiff had a history of borrowing vacation time.

On May 30, plaintiff went into Ling's office to request May 31 off, and to remind Ling that she would be off the following week (the June dates). Ling did not provide plaintiff with any response. Others in Ling's department stated that Ling would forget about their vacations and they would need to remind him. Plaintiff left on May 31st to drive her daughter to Georgia. In addition to Ling, plaintiff told Betty Loving, Kevin James, David Hamilton and Willie Washington that she would be gone. James was a work cell leader in Epitaxy, also supervised by Ling. Loving, like Ling, was a shift leader in another department. Plaintiff returned to her home on June 8th. No message from Ling or any

Page 5 - OPINION AND ORDER

other supervisor had been left for her at home. Plaintiff alleges that Ling requested the home telephone numbers of other non-African American employees. Ling states that when plaintiff did not return to work, he asked his cell leaders if anyone had "heard about Vivian," had she called in, and they responded, "no." On June 8th, Ling called Underwood to report that plaintiff had not come to work for four days nor had she called, and requested permission to consider her voluntarily terminated.

Plaintiff called James on the 11th who reported that Ling did not know that plaintiff was on vacation. Plaintiff then spoke with Ling who instructed plaintiff to speak with Underwood. On June 12 or 13th, plaintiff spoke with Underwood who told her that her employment had been voluntarily terminated.

Ling alleges that plaintiff did not come into his office in early May to request vacation time. Ling stated that plaintiff did not come into his office very often and that plaintiff was in his office only one time in May. Ling alleges the one time plaintiff did come into Ling's office in May, she left because another employee was already in Ling's office. Ling also stated, however, that plaintiff may have requested vacation time during plaintiff's one visit to his office in May, although he alleges that they did not discuss when or how long the vacation would be, or whether there existed a conflict with another employee's scheduled vacation. Another work cell leader, Cathy Burnett,

stated that she recalls two times in May when plaintiff went to Ling's office.

On the first day of plaintiff's absence, June 2, Kevin James a cell leader, in response to Ling's inquiry, told Ling that plaintiff was on vacation. When questioned by Underwood, James stated that he told Underwood the same information. Underwood, however, alleges that James told her he was not aware that plaintiff was on vacation.

Plaintiff told Underwood that the procedure for requesting vacation was unclear. Underwood then interviewed department members for the purpose of substantiating plaintiff's allegation, so that if the vacation request procedure was unclear, plaintiff could return to work. The employees stated that they "may or may not" need to fill out a vacation request. Plaintiff told Underwood that both Kevin James and Betty Loving knew that plaintiff was on vacation. Underwood admits that Loving confirmed that she knew that plaintiff was on vacation.

Underwood's supervisor, Cheryl Robison, said that she signed plaintiff's termination notice without any information that plaintiff had told Ling, James, or anyone else in the department that she was on vacation. Robison admitted that in other cases similar to plaintiff's, they had attempted to contact employees using their emergency contact information.

Barbieri said that he spoke with Ling and verified Ling's

version of the facts. Underwood, however, had neglected to tell Barbieri that Ling had forgotten about vacation requests in the past, nor did she share her report with him that reiterated that fact.

Finally, atypical of her customary practice, Underwood failed to produce any notes she made of plaintiff's complaints about lack of training, about the meeting with plaintiff and Barbieri, anything she might have done to follow up on plaintiff's complaints, about her conversation with plaintiff regarding her termination, or about her conversation with James when James told her that he told Ling that plaintiff was on vacation.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

In an employment discrimination case, "if a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons," summary judgment for the moving party is inappropriate. Wallis v. J.R. Simplot, 26 F.3d 885, 889 (9th Cir. 1994).

DISCUSSION

Plaintiff alleges the following claims: race discrimination and retaliation under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; Or. Rev. Stat. 659A; and wrongful discharge.

Title VII of the Civil Rights Act of 1964 makes it unlawful

for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). An employer commits an unlawful employment practice when a protected characteristic is a "motivating factor"in the employer's decision, even if other factors also motivated the practice. § 2000e-2(m).

In an employment discrimination case, the Supreme Court directs that a plaintiff must first establish a prima facie case in response to a summary judgment motion. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To establish a prima facie case, plaintiff "need only offer evidence that gives rise to an inference of unlawful discrimination." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)(internal quotes omitted). The degree of proof required to establish a prima facie case "on summary judgment is minimal and does not need to rise to the level of a preponderance of the evidence." Id. After plaintiff has established a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Id. The burden then shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. Id. at 890.

A plaintiff may show pretext two ways: "(1) indirectly, by

showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable; or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Chuang v. Univ. of Calif. Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000). These two approaches are not exclusive; a combination of the two kinds of evidence may serve to establish pretext so as to make summary judgment improper. Id. A plaintiff need not introduce additional, independent evidence of discrimination at the pretext stage. Id. "A disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting her prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's asserted reasons. Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). Therefore, "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." Reeves, 530 U.S. at 143. Other factors to consider in determining pretext include what information is known to the defendant at the time of the adverse employment decision, the plausibility of the explanations offered in light of the evidence, and any inconsistencies within the explanations offered. Norris v. City and County of San Francisco, 900 F.2d 1326, 1331 (9th Cir. 1990).

1. Plaintiff's Claim of Race Discrimination

To establish a prima facie case of race discrimination, plaintiff must produce evidence that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment decision; and (4) similarly situated individuals outside the employee's protected class received more favorable treatment. <u>Aragon v. Republic Silver State Disposal, Inc.</u>, 292 F.3d 654, 658, <u>amended</u>, 2002 U.S. App. LEXIS 14462 (9th Cir. 2002). Defendant challenges only the fourth element.

Plaintiff's evidence as to the fourth element is that Ling would stand and stare at her; three non-African American employees who had less seniority than plaintiff were trained ahead of the plaintiff; when plaintiff complained that a Caucasian employee was moved ahead of plaintiff for training, Ling responded that he "forgot" that the Caucasian employee came into the department after plaintiff; and while other employees were allowed to make verbal requests for vacation, Ling "feigned ignorance" of plaintiff's verbal vacation request resulting ultimately in her termination. I find that this evidence gives rise to an unlawful inference of discrimination. Noting that the degree of proof required to establish a prima facie case on summary judgment is minimal, I find that plaintiff has sustained her burden at this stage.

The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for plaintiff's termination. Defendant asserts that it terminated plaintiff because she failed to come to work for three or more consecutive shifts without arranging for her absence.

The burden then shifts back to plaintiff to show that defendant's reason for terminating plaintiff was a pretext for discrimination. Plaintiff asserts that she has offered evidence to show that defendant's stated reason is not believable. In early May 2004, plaintiff alleges that she went to Ling's office to make a vacation request. After he responded that plaintiff could not take vacation in mid-May because another employee was already scheduled on vacation, he pulled up his calendar, and plaintiff requested June 2,3,7 and 8, which dates were available. Ling did not respond because another employee came into Ling's office with a emergency request. Plaintiff left Ling's office assuming that she had those requested vacation days in June. Plaintiff again reminded Ling of her June vacation days on May 30th. Plaintiff acknowledges that Ling did not directly respond, however, he did not voice any objection.

Moreover, although Ling states that plaintiff was not in his office in early May, and Underwood says that Ling said that he was sure that plaintiff was not on vacation, plaintiff relies on James' deposition testimony where he states that on the first day

of plaintiff's absence, when Ling specifically asked him if he had heard from plaintiff, he responded by telling Ling that plaintiff was on vacation. Further, it was defendant's practice to attempt to reach employees through their emergency contact numbers when they unexpectedly did not show up for work. However, no one contacted the plaintiff, nor was there a message on her telephone when she returned home from vacation. Plaintiff alleges that defendant's failure to follow its practice of attempting to contact employees not at work is evidence of pretext.

As further evidence of pretext, plaintiff points to Underwood's requirement that plaintiff produce something "stating" that she was on vacation or she would be terminated. Plaintiff asserts that defendant's attempt to require that plaintiff produce something in writing that she was on vacation conflicts with defendant's lack of rules and practice of not requiring vacation requests to be in writing, and thus, is evidence of pretext.

Plaintiff also points to defendant's investigation of her termination as further evidence of bias and pretext. Underwood told plaintiff that she would investigate the circumstances surrounding her termination. During her investigation, Ling told Underwood that he was sure that plaintiff was not on vacation and that he could not have forgotten any request she might have made

for vacation. Underwood then undertook an investigation to see if Ling's vacation procedure was uniform, found that it was not, yet still refused to reinstate plaintiff. Underwood also did not tell her supervisor, Robison, that plaintiff had told others in the department that she was on vacation, and thus, Robison signed plaintiff's termination form without any information that plaintiff had told Ling, or James, that she was on vacation. Finally, although it was Underwood's practice to take notes during any such investigation, Underwood did not possess any notes concerning this investigation.

The Ninth Circuit has articulated a high standard for granting summary judgment in employment cases. Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1409-10 (9th Cir.), cert. denied, 519 U.S. 927 (1996). The court requires very little evidence to survive summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a searching inquiry - one that is most appropriately conducted by the factfinder, upon a full record. Id. Considering this standard and the evidence of pretext presented by plaintiff, I find that disputed issues of material fact surround defendant's decision to terminate the plaintiff. Therefore, defendant's motion for summary judgment on plaintiff's claim of race discrimination is denied.

///

2. Plaintiff's Retaliation Claim

A plaintiff may establish a prima facie case of retaliation by showing that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a casual link between her protected activity and the employer's action. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002). Plaintiff alleges that her protected activity was the filing of a civil rights complaint against defendant in 2001, complaining that Ling would stare at her, and complaining that Ling treated her differently regarding training. Plaintiff's initial civil rights case was dismissed in May 2003. One year later, in June 2004, plaintiff was terminated. Defendant challenges only the third element of plaintiff's prima facie case.

Causation sufficient to establish a prima facie case "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory discharge." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). Plaintiff contends that she has produced sufficient evidence to raise an issue of material fact as to whether her protected activity was a motivating factor in her termination. Ling knew Michael, they worked together as two of only four shift leaders on the same shift in different

departments, and they were walking partners for a year. Ling knew of plaintiff's problems with Michael at the time of her transfer into his department and, at one point, Ling told plaintiff that he wasn't "judging" her "through [Michael]." Ling admits that he knew plaintiff had filed a complaint, and in 2003, Ling knew that plaintiff had complained about him. Based on this evidence, I find that there are sufficient disputed issues of fact to deny summary judgment on plaintiff's retaliation claim.

   3. Plaintiff's Claim for Wrongful Discharge

Under Oregon law, "the elements of a wrongful discharge claim are simple: there must be a discharge, and that discharge must be wrongful." Moustachetti v. State of Oregon, 319 Or. 319, 325, 877 P.2d 66 (1994). A plaintiff need not show that she was discharged "because of" her protected activity; rather, she need only show her protected activity was a "substantial factor" in her termination. Holien v. Sears, Roebuck and Co., 298 Or. 76, 90 n.5, 689 P.2d 1292 (1984). Plaintiff relies on the evidence discussed above in both her race discrimination and retaliation claims for evidence that her protected activity was a substantial factor in her termination. "To be a substantial factor, the employer's wrongful purpose must have been a factor that made a difference" in the employer's decision to take the adverse action. Estes v. Lewis and Clark College, 152 Or. App. 372, 381, 954 P.2d 792, rev. denied, 327 Or. 583, 971 P.2d 411 (1998)

Page 17 - OPINION AND ORDER

(internal quotation omitted). Oregon courts have held that a jury could infer from the totality of the circumstances that the protected activity was a motivating factor in the plaintiff's termination, even though the defendant terminated the plaintiff thirteen months after the protected activity. <u>Shockey v. City of Portland</u>, 100 Or. App. 166, 170, 785 P.2d 776 (1990), <u>aff'd in part, rev'd in part</u>, 313 Or. 414, 837 P.2d 505 (1992), <u>cert. denied</u>, 507 U.S. 1017 (1993).

I find that there exists an issue of material fact as to whether a substantial factor in plaintiff's termination was her resistance to defendant's alleged racial discrimination and/or retaliation for plaintiff's former civil rights complaint. Therefore, summary judgment on plaintiff's wrongful discharge claim is denied.

<u>CONCLUSION</u>

Defendant's motion for summary judgment (doc. 22) is denied. IT IS SO ORDERED.

Dated this 13 day of September 2005.

_____
Ann Aiken
United States District Judge